case, which is Michael Yamashita v. Scholastic. You may proceed. Yamashita? All right, you can take the podium. Thank you. May it please the Court, good morning. Even before you start, you can do whatever you want, whatever you think you should do. I hope you will mention during the course of this, address the question of the breach of contract claim and where it is and what should happen to it. Understood. Thank you. I think I'm maxed out. I need to inform the Court and apologize for the omission of a really important case in this matter. The case that we somehow omitted from our briefing in the Appeals Court. It's an important case authored by Judges Wood, Posner, and Rovner out of the Seventh Circuit called Muhammad Ali v. The Final Call. And perhaps your . . . Citation, do you want to . . . Yes, and the pin site is 832, Fed 3rd, 755. This case was decided in August of 2016. The case is essential because it directly addresses one of the fundamental issues in this case. And that is what . . . This case was decided over a year and a half ago and this is a field that you litigate in regularly and you didn't call it to our attention? Correct. We briefed it below and directly discussed it below, which is no excuse for not doing it here. And it's professionally embarrassing. But it's essential that the Court recognize that our view is that it's the brightest light on the issue, what is necessary to be pled in a copyright infringement case. I fully understand and appreciate the Court's question and have no excuse. But . . . I'd like to have your opponent have a full chance to respond to it in a measured way on appeal. Understood. Please go ahead and explain why it's essential. Understood. It's essential because there's been a misapplication or a misstatement of the fundamental notion of what is necessary to plead a copyright infringement case. Feist has Feist Publishing versus . . . Feist focused on originality, really, more. It has that statement that has been repeated over and over again, that what's necessary to plead a copyright infringement claim is ownership and copying. But then we've said that copying is shorthand for unauthorized copying. And what, of course, is at issue here is how much was authorized. And the complaint is devoid of any particular allegations about in what way the licenses were exceeded. In fact, we don't even really have meaningful licenses to look at. Well, that view, I understand that view. Respectfully, we suggest that it's very important that the word unauthorized has been injected into what Feist said in 1991. Feist did not say that you must show unauthorized copying. And the reason for that is spelled out in Muhammad Ali, which is to say that otherwise we're required to prove a negative. We're required to prove . . . First of all, we're required to go under the affirmative defenses of the defendant because . . . Why does it make sense as a general matter in a copyright regime that requires registration and admits of licensing and where you, your client, clearly, according to your allegations, authorized Corbis to give licenses and to authorize use. Why does it make sense to start in a copyright infringement action at the premise that your client was the owner and there was copying and allow that to be sufficient to state a claim for copyright infringement? I don't really understand why that makes sense. Well, it makes sense because first, Feist said that and says it does not include unauthorized. But second, the very rationale and Muhammad Ali points this out. And with respect to fair notice, the Scholastic knows full well about Muhammad Ali because we both argued it in the lower court. But the reason, the rationale is set forth in Muhammad Ali by Judge Wood. He said to require unauthorized . . . she, sorry . . . She said to require unauthorized copying would be to prove a negative, to have to prove a negative. And it's exactly what happens here in this case because here's what's really happening in this case. Scholastic knows full well of the licenses that it has. They know full well that they will not turn over any information about how they exceeded the licenses. Let's assume for a moment that . . . Your client authorized Corbis to license various parties the use of the photographs. Isn't that right? Correct. And I was confused that your client would not have noticed because of its relationship with Corbis of the terms of the license. I mean, they had to provide authorization to Corbis to give licenses. Yes. So why wouldn't your client have access to the terms of the license? Ordinarily, you would think that would be the case. In this case, the facts are that Corbis never provided the licenses. And then when counsel for Yamashita asked Corbis to do so, Corbis said, subpoena them. And in reality, is in bed with Scholastic because Scholastic is a big . . . and other clients are big clients of Corbis. What document governs the relationship between your client and Corbis? A representation agreement. Is that in the record? I believe it is. We can provide that on rebuttal, but I'm not sure. But I can represent to you that I'm very familiar with them and they do not require Corbis to give us the licenses, us meaning Yamashita. Why isn't Corbis a defendant? Pardon? Why isn't Corbis a defendant here? Well, at one point in time, we contemplated that. But the real issue, the beef we have is with Scholastic and what is the fiction that's occurring here. Because after all, what's the fundamental notion? Fundamental notion is whether they have fair notice of the claims that we're asserting against them. There is no question. They know what this lawsuit's about. They've been sued many times before. In other of your complaints, and we've seen that there have been many, there have been quite a varied set of allegations, some of which in which there are exhibits that actually show the term of the license and suggest ways in which infringement might have occurred. Here, you say that they've been infringed in various ways, the license has been exceeded in various ways, including five or six ways, and or, without any specificity about the type of infringement. And you allege that there's been infringement as to language, potentially. These are photographs. Is there any better specificity you can provide with regard to the kind of infringement that you claim occurred? In this case, no. But we provided everything we knew about, and that's in the record under Exhibit 1 to the proposed first amended complaint. And what would infringement as to language mean? Oh, infringement as to language means that you license the work for use in English language. If you licensed it for other languages, there's more money charged. These are photographs, right? It's textbook. It's the license protocol. What kind of version would be authorized? Could they publish in foreign editions? Correct. Is that right? So if the photograph goes into a book, of course a photograph is a photograph. But if the language of the book is Spanish or French, in the pricing of these licenses, that adds fees. That's why we contend that there was a request for the minimum license parameters frequently. Why? To save money. And then when it was decided, sometimes before licensing even, that they would use the licenses or make 100,000 copies, even though they knew that, they would license for 40,000. In what case in the district court has the district court allowed you to go forward on a motion to dismiss with a complaint that alleges either this level of detail or less? Because there was only one or two images here that Judge Forrest allowed you to proceed on, right? And as to the rest, she said there was inadequate specificity. Correct. One image out of 119 uses and about 83 photographs. Are there other cases? Every single case that we have filed, both against Scholastic, including Judge Fella, who sustained an almost identical complaint. No, no. The complaint was not almost identical in Judge Fella's case, because the exhibits were much more specific about the scope of the licenses, and it was much easier to discern what kinds of infringement was alleged. I believe that there are important differences between that complaint and this, which has virtually nothing. Well, we would respectfully take issue with that. For example, and I understand the difference, but we had that information when we pled that case before Judge Fella. Here we do not, but we have a lot of information, Your Honor. We have the invoice that was paid, the invoice number that the original license was made to Scholastic. So we have this connection. In other words, we have exactly the invoice number that would permit Scholastic to go back into the records and find the invoice and know what parameters they had there for the use of that image. We also provided them the date of the invoice, also the imprint within Scholastic, a whole number of different imprints to direct them as best we could. We also provided, of course, the registration date and number. You didn't provide copies of the infringed material. That's correct, but we asked, and here's why. If we had this, it's not about holding on to things that we had or withholding information that we had in order to keep them in the dark. That's not what's going on. Every single case that we filed against this company— Not to keep them in the dark, but your client was the owner of the photographs and executed the representation agreement authorizing certain licenses with Corbis and had the right in developing that relationship to require audit rights and was getting paid on the basis of usage. So there just seems to be an important link that is totally overlooked here. We're not really arguing about whether you've given enough information for the defendant to search 20 years' worth of records and to the extent it could identify the extent of use, but you had a primary right and responsibility, I would think, to know the terms of the license that you had authorized. Why is that unreasonable to think? Here's why it's unreasonable. Michael Yamashita is a National Geographic photographer. He travels the world. He makes photographs. He provides thousands of those images to Corbis. They license every day, probably. In the old days, at least, did. Michael Yamashita was not going to go to Corbis and say, please provide us the details of every license, the thousands of licenses. But that's his compensation. That's his livelihood. That's what he depends on. Why is it unreasonable for him to control that? Because this photographer is literally traveling the world to create new images. He's not in the business of monitoring his photographs, expecting that Scholastic, a textbook publisher who itself creates copyrighted work and who vigorously defends and brings lawsuits all over the country whenever their works are infringed. He's not in the business of checking Scholastic and Houghton and McGraw and Wiley every day to see what licenses did I give them. How would he know then? He gives a license for 40,000. How does he know when and if Scholastic starts printing 40,001, the one copy, or the 50,000th copy? It's unrealistic. There are cases that have addressed this issue to expect that somehow ahead of time, back in 2008. Were the defendants contractually bound to provide him with just that information? No. Why not? Between . . . well, let me back up. I asked about a contract. Yes. Corbis was not bound to Yamashita, but we assert that Scholastic was bound to Corbis to provide that kind of information. They were bound to provide copies. Do you believe that Corbis has this information? No. Corbis has been sold to a Chinese company, but when we subpoenaed their records, as they demanded, because in actuality they're a party more interested in Scholastic than a photographer, and would not turn over the licenses. And when you subpoenaed them, did you then find out how wide the use of the license was? No, because they have that information and they keep it secret. Scholastic's going to get up here and tell you that it's so difficult. I'm going to go back to the contract. Are you saying that Scholastic was contractually bound to give this information, the numbers and so on and so forth, which were missing, was bound to give that to the intermediary company and did not? Correct. We're saying that they were required under the PVAs, under their contracts, to give a copy of the textbooks in which they included Yamashita photographs. They never did that. Now, that's all? We're talking about copies of it or an accounting of numbers or what? Well, within the contractual provisions that Corbis had with Scholastic, it had a right to demand the uses, parameters of the uses from Scholastic. But that was never done because these were their clients, their good clients, and it would be like accusing your best client of stealing from you. And so, in practice, that was not done. So your time has long since expired, but you have reserved three minutes for rebuttal. We'll hear from Scholastic, and I'll note that plaintiff appellants had double the time allotted, so. Thank you. Good morning, Your Honors. Edward Rosenthal representing Scholastic, Inc. So I'd like to just start. First of all, I'd just like to point out that in the, referring to the Muhammad Ali case, in the Second Circuit, in the Tasini case, which dates back to 2000, and I probably can find a site if I look, this court held that if the issue was over the scope of a license, that the plaintiff bears the burden of showing that the license terms have been infringed. But instead of showing, that's a matter of proof, but we're looking right now at a 12B6 motion and what has to be pled. Right. So that gets kind of back to the Feist standard where appellant's argument is, well, Feist says all you have to do is have these two elements, ownership and unauthorized copying. But that's not the pleading standard in Twombly and Iqbal. It was made very clear it has to be more than a recitation of the elements of a claim. One has to actually articulate some factual basis that makes that claim plausible. And what's happened here, as the court's pointed out, is the plaintiff has simply said, here are five ways that Scholastic might have infringed Mr. Yamashita's rights. And in fact, in an email that was sent to us, which is in the record, appellant put it in the record, it's page A200 of the record, the counsel for Yamashita said, here's a copy of the complaint we filed, if you provide us with information about all the kinds of uses of these images and any other images you made of Mr. Yamashita's photographs, we won't serve this complaint. And, by the way, if you show us that you haven't infringed these, we will remove them from the complaint. That's not the way it's supposed to work. A plaintiff is supposed to come into court and say, here is what I have and here is how it's been infringed. But respectfully still, I understand that position, but even if he had the license terms, was able to say, okay, there was a license to permit you to do English language versions, 40,000 copies, hard, 20,000 soft, whatever, and on information relief we believe those numbers were exceeded because I saw some version when I was in Afghanistan and to my knowledge there was no right to publish an Afghan version. But how is he supposed to be able to allege without getting information from you, except on kind of a suspicion that some terms of the license weren't exceeded? He has to rely on his agent and you in good faith to report actual sales and print runs, doesn't he? Well, so that gets back to the discussion we were having a few minutes ago that you were having with Appellant. The photographer in this case chose not to bargain for or insist upon audit rights in his license of photographs through his licensing agent. Are audit rights actually available? I mean, this is outside the record, but can a photographer demand audit rights? So I don't know what Corbis would have said if a photographer said to Corbis, I want to have audit rights. But the bargaining positions are so uneven that it makes one concerned when the publisher says you could always have out-demanded audit rights. But as you pointed out earlier, this was the plaintiff's livelihood. He decided that he was going to give thousands of images to stock photography agencies to license, and the bargain was that he did not ask for or insist upon any information, including even the invoice. How typical is it in the industry to ask for audit rights? So let's step back from the stock photography for a moment and talk about licensing in general. In the licensing scheme, music licensing, licensing for motion pictures, the licensor always asks for audit rights. The licensor has the right to go in and ask the movie company to show the records and say how much money did you make, where did you distribute my film. And if you didn't have that, you'd have situations like you have here where somebody could come in 20 years later, because some of these invoices go back to the 1990s, and say, hey, I just realized that you didn't pay me or I just heard that you were sued by somebody else for distributing in some unauthorized country. Now I want to go back and I want to see every use you made of my materials.  So there are, I think, five different preferred vendor agreements that deal with it. Some of them have a provision in it that Scholastic was to provide copies of the books in which the photographs were included. Just a copy of the book. Yes. No numbers. There was a provision also in some of these preferred vendor agreements that Corbis could include in an invoice an accounting requirement, but we have no evidence that that ever happened here. So there was no obligation on your client, on part of your client, no obligation under its contractual arrangements with Corbis to present it with the kind of information that we're talking about being missing here. Is that right? That's correct. That's correct. The copies of the PVAs that we have in the record are largely redacted and really impossible to tell what the terms are. What is available to the plaintiff in terms of getting knowledge of what the terms of the agreements were? The portions that are redacted are payment terms. They're how many dollars are spent for 40,000 copies, for 100,000 copies. The critical terms here are contained in the standard terms and conditions, which are not redacted and are in the record in each instance. Is it clear also or has a representation been made that they were not modified in the redacted portions? There were no issues in the redacted portion. There is nothing that relates to the kind of questions you're asking today, for example, an obligation by Scholastic to provide information. The relevant terms about the numbers that were authorized outside the distribution area, the use of derivative publications, foreign language editions, and time limits, all of those should be apparent in the documents that are in the record. So the issue about exactly what the scope of the license is is often it's on the face of the invoice that is sent between, that Corbis sends to Scholastic. At least there is such information about language and so on. The portion of the redacted portion of the preferred vendor agreements is really just payment numbers. How much is paid for those particular uses? So I want to get back to a question that Your Honor asked earlier, which is the example you gave about a book that the plaintiff sees in Afghanistan. Well, if the plaintiff saw a book in Afghanistan and had an invoice or knew that he hadn't licensed for the work to be sold in a foreign country and the plaintiff came in with a sufficient level of proof to say, I didn't authorize foreign uses of this book, and this book is available in Afghanistan, and here's a picture of the book, yeah, maybe that would be enough to state a claim. That's the easiest one. But in what circumstances is the plaintiff likely to be able to say or have more than a suspicion that the numbers were exceeded? That is more difficult for a plaintiff, but there are certainly instances where a plaintiff might know, for example, that a book, looking at more current times, that a book was high up on the Amazon bestseller list or that somebody in a press release talked about how successful a book was. But Corbis would not have that information. Corbis would not typically have that information. But not in these cases. Yes. If the appellant here had negotiated with Corbis for an auditing report based on where his photographs appeared, Scholastic would have had to provide that to Corbis? I mean, how would he get the audit? If the photographer had insisted in his agreement with Corbis that Corbis include an audit right in its agreements with Scholastic for the photographer's work, then one assumes the photographer could have said to Corbis or Corbis would have said to Scholastic, I want to see all this information. That kind of a clause was not insisted upon and did not exist in the agreements between Corbis and Scholastic. That's correct. That's correct. So Scholastic would have had that information and would have had to provide it to Corbis if plaintiff had negotiated that clause in his licensing contract with Corbis. Corbis would then have asked Scholastic to provide all that information. Is that correct? I don't know what Corbis would have done. Do you have contracts with people who do have auditing clauses? Yes. For example, authors, the authors of the book as opposed to photographers, often will have audit rights in a publishing agreement between an author and a publisher, and I'm sure that Scholastic has other instances where its licensors do in fact have. But it has to keep precise records of the use of the work. Well, I think that the scope of an agreement may sometimes dictate what kind of records are kept, but if you're going to go back 20 years and some of these licenses were with entities that Scholastic didn't even own at the time that these licenses were entered into, it's not surprising that these records are not available. I know this sounds like the only course I passed in law school was contracts, but can I get back to that question? Sure. And that question is, there was some mention in the attempt to get an amended complaint there was some mention, I think, of a breach of contract, which was not, I think, addressed by the trial judge, the district judge. My simple question is, was there an arguable contractual right for Corbis to get that kind of information, the kind of information we're talking about that would have shown the problem? Is there any contractual provision which might be interpreted as having required your client to turn over that information to the intermediary, to Corbis? So leaving aside the question whether this is a claim that Mr. Yamashita could bring, putting that aside, there is nothing explicit in the agreement that required Scholastic to do to provide this kind of information to Corbis. Now, had Corbis come in during the applicable limitations period and said, we have a right upon information and belief, you printed more than you said you did or we learned. That wouldn't be contract, is what I'm asking. Right. But based on the contract itself, there was no specific, and I'm not even sure any implied requirement, Scholastic do the kind of things the plaintiff is asking for here. So I see my time is up, though I'm happy to take more if you're... Thank you. Okay, thank you. Let's talk about that last representation that Mr. Rosenthal just made, because I'm looking at a third... Can I ask a question about an auditing requirement? Why didn't Mr. Yamashita ask for auditing requirements in his contracts with Corbis? Because they're adhesion contracts and Corbis would not have agreed to it and said, here's the representation agreement that we offer to you. Mr. Gates established this big company. If you want to come on board to Corbis, you'll sign it. Is Corbis the only agency that licensed photographs? No, but the very biggest and most prestigious for many years. And they wouldn't have negotiated a term that required whoever used the photographs to audit that use? Well, we're speculating now, but I can tell you that Corbis did not permit individual modifications of contracts. We represent a lot of photographers who have Corbis as their license and they wouldn't allow it. But importantly, if we look at the record, A376, Mr. Rosenthal just represented to you that there's no audit requirement that Corbis imposed on it. But as Your Honor had pointed out earlier, what about all these redactions? Well, if you look at that, what do we find here? On A36, audit rights. This is an agreement between Scholastic and Corbis. I'm sorry, what page are you looking at? A376? A376. And what do we have? Big black removal of audit rights. Yet he just told Your Honor that there was nothing like that in the agreement between Scholastic and Corbis. Audit rights, colon. I'm sounding silly to myself, but what contractual rights was it that when you wanted to amend your complaint, what was the contractual right you were seeking to assert? Well, in part, through our agent, because remember how this whole thing started. We were out in Jersey. Tell me what the right was. Well, I don't know, Your Honor. If I could read under this blacked-out material, then I could tell you, because this is a contract between Yamashita's agent, Corbis, and Scholastic. They know what it says. They won't provide it to us. You don't know until you see that. You don't know whether there was a breach of contract. Well, we've listed in our briefing what portions of preferred vendor agreements we think implicate a contract right that's breached here. But also, the more telling, probably, claim would arise, and we would get this under discovery. Remember, we're not here to prove the case. We're here to plead enough. A short, simple statement that gives them notice so that they can fairly defend. Does anybody believe here that they can't fairly defend? The word plausible, because we're stuck with the word plausible now. Correct. As well as a rise above the speculative. Correct. Your allegation is, you know, exceeded license and infringed in various ways, including printing more than authorized, publishing without permission, using foreign publications. There's just no indication in what way there was an infringement. The actual act that they have committed, that only they know about, I agree. It's not in there. But are we required to prove our case in fact pleading in the complaint? No. You have to rise your right to relief above the speculative. It's not speculative, though. They have the photographs. They licensed the photographs. Apparently, they paid for the photographs. Who knows if they licensed? We then sent them a letter. There's inference from this, and it was pleaded. There's factual. The fact is, we sent them a letter asking them to disclose their uses. If they had a valid license. Isn't it entirely possible, consistent with your complaint, that you don't have a right to relief, that they acted within the scope of their license? No. Why is that? Because they know, given the volumes of licensing involved here and their research and their look at this matter and other cases, that they have gone over the license limits numerous times. They've gone over the count, the print run number. You've done it in other circumstances, and you've sued them for that. Yes. That makes it not . . . And they've disclosed it. They've disclosed it. Absolutely, and we've pled that in our complaint. Mr. Rosenthal nor corporate counsel will not get up in front of this court and say, we have not gone over those license limits. And Mr. Rosenthal says this is a scope of license matter. This is not a scope of license matter. If that were the case, it would be a contract case. He knows very well that New Kids on the Block said, once you exceed the license limits of a limited license, you commit copyright infringement. We are required, as Feist says, to show two things. How could we have to plead beyond the prima facie case requirement? How could possibly in our complaint we have to exceed what the prima facie case requires? Copying ownership. We know under Elsevier that LL Cool J is not even correct anymore because registration is not an element. What they're saying to us, and what the panel is indicating in part, you know, with good questions, is that we somehow have to show proof, essentially facts, of how they exceeded a license, yet we don't have to show they even had a license. All we have to really show is they copied. So is it plausible, under what we gave them, that whole list of images and how they purchased an invoice to use those images, and when they did that, is it plausible that they copied them? Absolutely, unless they're in the business of buying images to put in textbooks and then don't use them. So we're missing the mark. Is it plausible that they exceeded the scope of the license? Can you allege that? We don't have to allege it because license is an affirmative defense. They have to assert it. They haven't even answered. We don't even know if they're going to claim license. That is an affirmative defense. We don't have to plead around their affirmative defenses. That's what Muhammad Ali says very clearly, and that's why I'm willing to stand up here and have egg on my face about not briefing it. But we're not here about my pride or anything other than coming to the correct legal conclusion about what is required of a plaintiff to file a complaint that gives fair notice of the claims that we're asserting. If they can stand up and say they don't really know what's going on here and they don't have fair notice, then fine, let's see it. But they know very well what we're talking about, and Mr. Yamashita will lose his day in court if the court requires us to show the facts that essentially would give a summary judgment in this case, show those in our complaint ahead of time without discovery, and they get away with a perfect crime. We will hold on to this information that would show our infringement. We'll pretend that we don't know what we're talking about here, that there's not been enough shown in the complaint. We don't know. That's a fiction. And then we will have an injustice. And does our pleading system permit and demand information they have solely within their records, demand that the plaintiff get that, and if the plaintiff can't access it, lose, not even get to go to the courthouse and have discovery? To simplify, attempt to simplify what I think you're saying, you're saying is plausible, what has to be plausibly pled in this case is simply the ownership and the fact that it was in fact copied by somebody else, period. Correct. Nothing more. Correct. Why otherwise would we sense license? Yes, no, I agree completely. And the rationale is license is an affirmative defense. When for the first time are we saying that we have to plead around affirmative defenses? Now, look, we're partly responsible for going down this path because we probably should have just pled ownership, copying, registration, and forgotten about to the extent that they exceeded license limits and all that. But we can't be faulted for having too much information in the complaint, can we? And we can't be faulted for stating a legal theory. Judge Wood says that in Muhammad Ali, that you don't have to plead the legal theory. So, yeah, we sort of got led down the path, too. And courts have. I represent to you, Your Honor, respectfully. If the Second Circuit has said that unauthorized copying, that's a very important adjective, or adverb, I guess it would be, unauthorized copying must be shown, that's totally different. But it can't be willy-nilly put in there, oh, well, we have said under Feist we're going to add unauthorized. Is that fair? Counsel, your time has expired. Thank you very much. Thank you both for the argument. We'll reserve decision.